IN THE UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 MAR 30  A 11: 29

U.S. DISTRICT COURT
DISTRICT OF MASS

James Covington,
    Plaintiff

v.

Peter H. Fauver, Esq.,
Blaine R. Hawkes, Esq.,
    Defendants

)
)
)
)
)
)
)
)
)
)
)

Civil Cause:

JURY TRIAL DEMANDED

05 - 10631

Referred to New Magistrate Judge

ORIGINAL COMPLAINT

NOW COMES James Covington, Plaintiff pro-se in the above civil cause, who complains against the Defendants for violations of his civil rights pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1985, and for state law tort claims, as follows:

PARTIES:

1.  James Covington, ("Covington"), the Plaintiff, is an inmate at the New Hampshire State Prison in Concord, N.H., with an address of: 281 North State Street, PO Box 14  29851, Concord, NH 03302-0014.

2.  Peter H. Fauver, Esq., ("Fauver"), a Defendant, is sued in his individual capacity, and, or in the alternative, in his official capacity. Fauver is a member of the New Hampshire Bar, a New Hampshire Superior Court judge, and a resident of New Hampshire.  Fauver's address is: 259 Country Farm Road, Dover, NH 03802.

3.  Blaine R. Hawkes, Esq., ("Hawkes"), a Defendant, is sued in his individual capacity, and, or in the alternative, in his official capacity. Hawkes is a member of the New Hampshire Bar, a public defender with the NH Public Defender's Office in Strafford County, New Hampshire, and a resident of New Hampshire.  Hawkes' address is: 50 Chestnut Street, Dover, NH 03820-3730;

(1)

JURISDICTION:

4.    Jurisdiction is proper pursuant to 28 U.S.C. §1343(a)(1-4), as the Plaintiff's claims involve an action under 42 U.S.C. §1983 and §1985.

STATEMENT OF FACTS:

5.    On May 27, 1999, the Plaintiff was involved in the death of his girlfriend, Debra Duncan, in Somersworth, Strafford County, New Hampshire. Subsequently, Mr. Covington was indicted on two counts of second-degree murder in Strafford County, NH.    The Defendant Hawkes was appointed as defense counsel for Mr. Covington.    The Defendant Fauver presided as the state judge in the Strafford County (New Hampshire) Superior Court, in the matter of State of New Hampshire v. James Covington, 98-S-584-F.

6.    The Defendant Hawkes, as counsel for Mr. Covington, retained Dr. Harold J. Bursztajn, Associate Clinical Professor at the Harvard Medical School in Cambridge, Massachusetts, to provide expert psychiatric evaluation of Mr. Covington for the defense.  Dr. Bursztajn's expert report was faxed to the Defendant Hawkes, on or about January 19, 2000.  However, a copy of this expert report, together with its findings, was withheld by Hawkes from Mr. Convington.  The Bursztajn expert report found the following:

... James Covington... was suffering from a major psychiatric illness which substantially reduced his capacity for social judgment, mood modulation, and problem solving.  By reason of these illness-caused impairments, when struggling with psychosocial stressors, as Mr. Covington was at the time of the offenses with which he is charged, his capacity to appreciate the wrongfulness of his conduct substantially diminished.

Furthermore, the Bursztajn expert report explained that further forensic neuropsychiatric evaluation was necessary.  See Exhibit 1.

7.    The Defendant Hawkes failed to disclose to Mr. Covington the substance or conclusions of the Bursztajn expert report, and consequently the need for further pyschiatric evaluation.

8.    On March 3, 2000, a chambers conference was held in the Defendant

(2)

Fauver's chambers in the Strafford County Superior Court. The Defendant Hawkes was present for this conference. The transcript of this chambers conference was transcribed on January 28, 2002. See Exhibit 2.

9. This transcript reveals that defense counsel Hawkes discussed the need to "roll back" Dr. Bursztajn's expert fee with the Defendant Fauver. Id., pp.5-6, lines 23, 1-3. Hawkes makes reference to "Wall Mart" in discussing Dr. Bursztajn's expert fee, and says that Bursztajn will have to cooperate in rolling back his prices, like a Wall-Mart discount store, "if [he] want[s] to work in this state again.". Id., p.6, lines 1-3. In response, the Defendant Fauver remarks:

It's safe to say if you hadn't done it, it would come back to bite us in three or four years. I did give him a lot of grief. Id., p.6, lines 4-6.

10. Based upon the revelations in the transcript, Mr. Covington contacted his former defense counsel, the Defendant Hawkes, in November 2004. See Exhibit 3. In response, on November 3, 2004, Hawkes advised Mr. Covington that "[t]he judge had asked [him] to talk to Dr. Bursztajn about reducing the fee he charged.". Id., ¶3. Additionally, Hawkes repudiated the findings of Dr. Bursztajn. Id., ¶1, p.2. See Exhibit 4.

11. The March 3, 2000 chambers conference transcript reveals defense counsel's conclusions that a plea agreement was "pretty much a done deal". See Exhibit 2, supra, p.7, lines 22-23. Apparently the Defendant Fauver agreed and added that this was a good thing, because "we don't have to send out the monsters and get a big jury pool.". Id., p.8, lines 2-4.

12. As a consequence of not knowing the contents and importance of Dr. Bursztajn's expert report, Mr. Covington entered into a plea agreement with the State of New Hampshire on March 16, 2000. See Exhibit 5. This plea was for thirty (30) years capped. This plea agreement was executed a second time on March 16, 2000, and signed by both Defendants Hawkes and Fauver. Id.

13.   On May 12, 2000, the Defendant Fauver sentenced Mr. Covington to thirty years to life in the New Hampshire State Prison.

CLAIMS:

14.   The Plaintiff reincorporates by reference all of the foregoing statement of facts.

15.   The Defendants Fauver and Hawkes, acting under the color of state law, in their individual, and, or in the alternative, in their official capacities, subjected Mr. Covington or caused Mr. Covington to be subjected to the deprivation of his constitutional rights to substantive and procedural due process under the Fifth and Fourteenth Amendments of the United States Constitution, to his constitutional right to the effective assistance of counsel and to the compulsory process of witnesses under the Sixth and Fourteenth Amendments, during the period from December 1999 through May 1999. The Defendants Fauver and Hawkes directed their actions into the Commonwealth of Massachusetts, and in specific to Dr. Bursztajn at Harvard Medical School in Cambridge.   The Defendant Fauver's actions were extrajudicial and outside the subject matter jurisdiction of the Strafford County New Hampshire Superior Court.   The Defendant Fauver contacted the Defendant Hawkes, ex-parte, and instructed him to "roll back" Dr. Bursztajn's expert fee before his psychiatric evaluation of Mr. Covington was complete.   The Defendant Fauver, on his own admission, personally gave Dr. Bursztajn, at Harvard Medical School in Cambridge, "a lot of grief".   The Defendant Fauver formulated, instigated and led an extrajudicial intrusion into Mr. Covington's defense through the "rolling back" of Dr. Bursztajn's expert fee.   The Defendant Hawkes was an instrument and participate in this scheme.   On information and belief, the Defendants Fauver and Hawkes contacted Dr. Bursztajn in Cambridge and demanded that he cease any further evaluation of the Plaintiff, contrary to the expert's advice and opinion.   As a consequence, the Defendants Fauver and

(4)

Hawkes deprived the Plaintiff of the exculpatory testimony of a crucial defense expert, which in turn caused the Plaintiff to enter into a plea agreement with the State of New Hampshire. The Defendants Fauver and Hawkes participated in this scheme to save the State of New Hampshire money. The Plaintiff asserts this claim under 42 U.S.C. §1983.

16.    The Defendants Fauver and Hawkes entered into an agreement or conspiracy for the purpose of depriving, either directly or indirectly, the Plaintiff of the equal protection of the law under the Fourteenth Amendment of the United States Constitution. The Defendants Fauver and Hawkes undertook acts in furtherance of this conspiracy by contacting Dr. Bursztajn through the telephone and mail in Cambridge, Massachusetts. This extrajudicial contact, outside the subject matter jurisdiction of the Strafford Superior Court and the State of New Hampshire, resulted in the termination of Dr. Bursztajn's contract and expert services, and the effective preclusion of his exculpatory testimony on behalf of the Plaintiff. As a consequence, the Plaintiff was injured as he entered into an onerous plea he would not have otherwise executed. The Defendants conspiracy deprived the Plaintiff of his constitutional rights to substantive and procedural due process under the Fifth and Fourteenth Amendments, the effective assistance of counsel, and the compulsory process of witnesses as secured by the Sixth and Fourteenth Amendments of the United States Constitution. The Plaintiff asserts this claim under 42 U.S.C. §1985(3).

17.    The Defendants Fauver and Hawkes conspired to deter, by force, intimidation, or threats, the expert witness Dr. Bursztajn, from attending the Strafford Superior Court proceedings in the matter of State v. Covington, and from testifying freely, fully and truthfully. The Defendants conspired to blacklist Dr. Bursztajn from the State of New Hampshire, if the expert did not cooperate in "rolling back" his expert fee at the Plaintiff's expense. In

spreading "grief", intimidating the expert, "rolling back" his fee, and threatening to blacklist the expert from the Granite State, the conspirators obstructed the due course and cause of justice, and the Plaintiff's constitutional rights to equal protection as secured by the Fourteenth Amendment of the United States Constitution. The Plaintiff asserts this claim under 42 U.S.C. §1985(2).

18.    The Defendants foregoing conspiracy to obstruct justice was, furthermore, tantamount to a felonious scheme aimed at discouraging the testimony of Dr. Bursztajn at trial, in violation of 18 U.S.C. §241 and §242, as well as witness tampering under the laws of the State of New Hampshire, R.S.A. 641:5(I)(b)(II). To the extent of any private right of action, the Plaintiff asserts these as civil claims under state and federal law.

19.    As part of the foregoing conspiracy, the Defendant Hawkes withheld Dr. Bursztajn's expert report from the Plaintiff, and fraudulently misrepresented its contents, and the import of Dr. Bursztajn's psychiatric evaluation. The Plaintiff reasonably relied upon defense counsel's fraudulent misrepresentations that "the expert's findings foreclosed any chance [he] had to proceed with an insanity defense.". See Exhibit 4, supra, ¶2, p.2. As a consequence, the Plaintiff entered into a plea agreement in March 2000 that he would not have otherwise executed. This extrinsic fraud, precluded the Plaintiff from the due process of a trial as secured by the Fifth and Fourteenth Amendments of the United States Constitution. The Plaintiff asserts this claim under 42 U.S.C. §1983, §1985 and through the state law tort of fraudulent misrepresentation.

20.    The Defendants' individual and collective actions in the foregoing claims have proximately caused the Plaintiff injury, including the lost opportunity of a defense and fair trial supported by the exculpatory testimony of Dr. Bursztajn.

(6)

RELIEF REQUESTED:

21.    WHEREFORE, the Plaintiff requests relief within the jurisdiction of this court, and for the following money damages:

A.    Five Hundred Thousand Dollars for each violation of the Plaintiff's constitutional rights under 42 U.S.C. §1983;

B.    Five Hundred Thousand Dollars for each violation of the Plaintiff's constitutional rights under 42 U.S.C. §1985(2);

C.    Five Hundred Thousand Dollars for each violation of the Plaintiff's constitutional rights under 42 U.S.C. §1985(3);

D.    Five Hundred Thousand Dollars for state law claims for fraudulent misrepresentation and extrinsic fraud;

E.    And, Five Hundred Thousand Dollars for any and all private rights of action for the Defendants violation of 18 U.S.C. §241 and §242, as well as New Hampshire R.S.A. 641:5(I)(b)(II);

F.    The Plaintiff's claims are asserted against the Defendants jointly and severally, and for such other relief as justice may require.

Respectfully submitted,
March 14, 2005

James Covington
Plaintiff Pro-Se
PO Box 14   29851
Concord, NH   03302-0014

AFFIDAVIT OF JAMES COVINGTON

I, James Covington, do hereby depose and say under oath this 14th of March 2005, that the foregoing statements of fact are true and accurate to the best of my belief and knowledge, and under the penalty of perjury.

James Covington

State Of New Hampshire
Merrimack, SS.

Personally appeared before me, James Covington, this 14 day of March 2005, who gave oath that the foregoing statements of fact are true and accurate to the best of his belief and knowledge. In witness whereof, I hereunto set my hand and official seal:

Justice of the Peace

DAVID E. HATT
Justice of the Peace - New Hampshire
My Commission Expires April 7, 2009

    a.   Jorge RE, Max EM, Robinson RG.  Neuropsychiatric Aspects of Traumatic Brain Injury.  pp. 273-299.

    b.   Wu JC, Amen DG, Bracha HS. Neuroimaging in Clinical Practice.  pp. 373-385.

IV. <u>Forensic Medical and Psychiatric Opinion</u>:

It is my forensic psychiatric opinion, which I hold to a reasonable degree of medical certainty, that the data reviewed and analyzed above are most consistent with Mr. James Covington, on June 1, 1999, at the time of the offenses with which he is charged, <u>was suffering from a major psychiatric illness which substantially reduced his capacity for social judgment, mood modulation, and problem solving.  By reason of these illness-caused impairments, when struggling with psychosocial stressors, as Mr. Covington was at the time of the offenses with which he is charged, his capacity to appreciate the wrongfulness of his conduct substantially diminished.  Whether or not his capacity was so diminished as to meet the standard for insanity, wherein the acts he is charged with are the product of a major mental illness or defect, can only be determined subsequent to an extended forensic neuropsychiatric evaluation.</u>  Specifically:

A.  <u>There is no evidence by history, examination, or psychological testing of exaggerating, faking, or malingering of symptoms, his MMPI-2 responses are interpreted as valid and he tends to be overly self-critical.</u>

B.  He tended by examination and history to minimize symptoms.  Thus he was noted as minimizing symptoms of depression on the BDI even though he appeared to be depressed, and was noted in the June 1999 Crises Management Services Assessment to be suffering from Major Depression and be severely depressed;

C.  As in the June, 1999 assessment, he appeared to be sincerely remorseful;

Exhibit 1

1          THE STATE OF NEW HAMPSHIRE

2

3      STRAFFORD, SS                          SUPERIOR COURT

4

5      *   *   *   *   *   *   *   *   *

6      State of New Hampshire    *

7           v.                   *        99-S-584-F

8      James Covington          *

9      *   *   *   *   *   *   *   *   *

10

11                    CHAMBERS CONFERENCE

12     Before:      Honorable PETER H. FAUVER,
                    Presiding Justice, Superior Court,
13                  Strafford County Superior Court,
                    Dover, New Hampshire,
14                  on March 3, 2000.

15

16

17     APPEARANCES

18     For the State:          Charles T. Putnam, Esq.
                               Attorney-At-Law
19
       For the Defendant:      Randy Hawkes, Esq.
20                             Attorney-At-Law

21     Clerk:                  Julie Howard, Esq.

22     Official Court Reporter:    Theresa M. Vadala, RPR

23

Exhibit 2

IN CHAMBERS

1

2        THE COURT:  I called this meeting just to see

3    where we are.  Okay.  What's the deal?

4        MR. HAWKES:  The deal is a guilty plea in return

5    for a State's recommendation of 30 years to life.  The

6    defendant will be asking for a sentencing hearing,

7    and he wants the opportunity to present the Court with

8    information in order to allow the Court to exercise

9    its discretion on imposing sentencing.  I think both

10   parties want a PSI too.

11       THE COURT:  Oh, sure.  So it is not a negotiated

12   disposition.

13       MR. HAWKES:  It is essentially a 30-year cap.

14   He will be able to argue mitigation.  We are kicking

15   around having to pay all this doe to Dr. Bursztajn and

16   Dr. Copper possibly having to come up.  They have

17   given us their initial opinions.  And if they

18   formulate a final, maybe we will just submit those

19   in the PSI rather than having them come.  James will

20   want to address the Court.

21       THE COURT:  Of course.  What I will do is --

22   do you want to do this the middle of April?

23       MR. HAWKES:  Forty-five days.  If Steve does

1   the PSI, he does a pretty thorough job.

2          MR. PUTNAM:  The State prefers the guilty plea

3   be taken and then have sentencing at a later date.

4          MR. HAWKES:  That's fine too.

5          THE COURT:  When do you want to do the guilty

6   pleas?

7          MR. HAWKES:  At the Court's convenience.

8          THE COURT:  Today?

9          MR. PUTNAM:  I haven't had a chance --

10         THE COURT:  You have to get the victim here

11  and the family.

12         MR. PUTNAM:  And we do need a chance to meet

13  with them.  This just kind of came together this week.

14         MR. HAWKES:  So a week or two.

15         MR. PUTNAM:  Maybe next week if there is space.

16         THE COURT:  I will check with the clerk.  I'm

17  going up to Carroll County.  I'll be up in Carroll

18  County, but I could come down here for maybe in the

19  afternoon.

20         MR. HAWKES:  Probably want a road trip.  If

21  you want to sit up there, we can come up.

22         THE COURT:  It's fine with me.

23         MR. PUTNAM:  I am happy to drive.  I don't know

1   how the family --

2        THE COURT:  I think it's easier for me to come

3   down.  I can come down some afternoon.  We will

4   schedule a plea, and I will come down late some

5   afternoon.  It shouldn't take more than an afternoon.

6   I will be back down here in April.  So we will

7   call you the first part of the week as to the -- when

8   we can do the plea.

9        MR. HAWKES:  Umm-mm.

10        THE COURT:  That will just take 15 or 20 minutes

11   and get it out for the PSI and do the sentencing.

12        MR. PUTNAM:  Great.

13        THE COURT:  Have you shared any of these reports

14   with Charlie?

15        MR. PUTNAM:  I just got them this morning.

16        MR. HAWKES:  Dr. Cooper's was faxed yesterday

17   and some of it was over itself so it was a bad copy.

18   He faxed me a new copy, and I gave it to Charlie this

19   morning.

20        THE COURT:  Did the tests over.

21        MR. HAWKES:  The only thing we are waiting

22   -- I don't think it's going to amount to much --

23   for is that SPECT exam Dartmouth Hitchcock had done

1    which has been forwarded to John Welch at the New

2    Hampshire Hospital for his evaluation.  That

3    essentially looks for brain damage and that sort

4    of dove-tailed with Steven Copper.  He doesn't see

5    there is going to be any brain damage so that's the

6    last thing we're waiting on.

7            THE COURT:  All right.  Okay.  So it's a cap

8    deal and on second degree.

9            MR. PUTNAM:  On second degree, Your Honor.

10            THE COURT:  Fine.  As soon as you have --

11            MR. HAWKES:  We will talk to the clerk early

12    in the week.

13            THE COURT:  And I will get down here just as

14    soon as I can --

15            MR. HAWKES:  Great.

16            THE COURT:  -- and take a plea.  Good job.  I

17    think probably it was a good use of funds.

18            MR. HAWKES:  I think probably it sways the

19    concerns he might have had or his family.

20            THE COURT:  Absolutely.  As much as I grumbled

21    about the expense, I think it's money well spent at

22    this stage.

23            MR. HAWKES:  I still haven't talked with Harold

1    Burton to get that roll back on his final.  It's

2    like Wal-Mart rolling back prices if you want to work

3    in this state again not three or four grand.

4         THE COURT:  It's safe to say if you hadn't done

5    it, it would come back to bite us in three or four

6    years.  I did give him a lot of grief.

7         MR. HAWKES:  Don't reach into that desk.

8         THE COURT:  I am going to leave that picture.

9    That's -- did you hear this?  Off the record.

10                  (Off the record colloquy.)

11        THE COURT:  And the victim is on board with this

12   thing?

13        MR. PUTNAM:  They were the last time that we

14   talked.  They were pretty insistent it needed to be

15   30 and the chance to make their statement to the

16   Court.

17        THE COURT:  Well, we'll give you as much time

18   as you need.  We will have a couple hours in the

19   morning.  We will give you as much time as you need

20   for this thing.  Don't worry about that.  Okay.

21        Is there a sentence review waiver?  Will that

22   be part of it?

23        MR. HAWKES:  I haven't even thought about it.

1    THE COURT:  Another piece of this, for example,

2    if the Court is reviewing everything and imposes 30,

3    does this give up your right to sentence review?

4    MR. HAWKES:  You know, given the facts of the

5    case, I don't know that I encouraged him sentence

6    review even if he got 30.  I would have to tell

7    him they could increase it.  But I will speak to him

8    about it, but he'll probably be inclined to decline.

9    THE COURT:  Is that part of the deal?

10    MR. PUTNAM:  I hadn't given it a great deal

11    of thought.  I think it should be included in the

12    deal, and I think that that's likely to be in

13    Mr. Covington's interests to do that.

14    MR. HAWKES:  I would agree.  I think I'll

15    probably encourage it.  I can specify that to him

16    and make sure we are comfortable this is a fair deal.

17    There are some aggravating factors that could,

18    you know, tax it up if he is not lucky at sentence

19    review.

20    MR. PUTNAM:  I think -- I think it ought to be

21    included.  I am open to talking about that with Randy.

22    MR. HAWKES:  I think it's probably pretty much

23    a done deal.

1    THE COURT:  Okay.  Good.  All right.  I will

2    pass this on to the clerk.  It's also so we don't

3    -- we don't have to send out the monsters and get a

4    big jury pool.  All right.  Great.

5        MR. PUTNAM:  We appreciate the care that has

6    gone on in keeping things on track.

7        THE COURT:  Keeping things going.  We will

8    see you probably next week.  Do you have any conflicts

9    next week late afternoon 3:30, four o'clock?

10       MR. PUTNAM:  I think I am all set with that

11   time.

12       THE COURT:  Off the record.

13            (Off the record colloquy.)

14         (This concludes the chamber conference.)

15            * * * * * * * *

16

17

18

19

20

21

22

23

1                    CERTIFICATE

2          I, Theresa M. Vadala, Certified Shorthand

3    Reporter in and for the State of New Hampshire and

4    the New Hampshire Superior Court System, do hereby

5    certify that the foregoing transcript, as reduced

6    to computer type under my supervision, is a true

7    and accurate transcription of my stenographic

8    notes to the best of my knowledge, skill, ability

9    and belief.

10

11

12

13

14

15

16

       Date: 11/29/02

17                          Theresa M. Vadala, RPR

18

19

20

21

22

23

November 1, 2004

Mr. Randy Hawkes, Esq.
NH Public Defender
50 Chestnut Street
Dover, NH  03820-3730

Re: State v. Covington

Mr. Hawkes:

Have you read the transcript of the March 3, 2000 chambers conference?  I
enclose a copy for your convenience.  Perhaps you can clarify a few passages
for me?

On page five and six you speak of "rolling back" Dr. Bursztajn's expert fees,
and make reference to the fact that if he didn't cooperate, he would find it
difficult to work in New Hampshire in the future.  Just what did you mean by
these statements?

Moreover, what was your tactical or strategic decision for withholding the
Bursztajn report from me prior to the plea and sentencing?  Perhaps you will
find the answer in the file?

In this respect, I think it wise for you to forward a complete copy of the
file, together with all copies of correspondence, faxes, notes, memoranda,
research and email.

Unless I receive the file and immediate answers from you, I can assure you
that, at a minimum, a professional conduct complaint will follow.

I look forward to receiving an unadulterated file and honest answers.

Sincerely,

James Covington
PO Box 14  29851
Concord, NH  03302-0014

Exhibit  3

# New Hampshire Public Defender

50 CHESTNUT STREET, DOVER, N.H. 03820-3730          TELEPHONE: (603) 749-5540   FAX: (603) 749-0962

November 3, 2004

James Covington
# 29851
NHSP
P.O. Box 14
Concord, NH 03302-0014

Dear James:

I got your letter of November 3, 2004.

First, let me explain to you the in-chambers conference regarding Dr. Bursztan:

The Judge is discussing the amount of money we asked the Court for to pay for a psychological examination for you. As you recall, I retained (at no cost to you) the best expert in the field, Doctor Harold Bursztan of Harvard Medical School. At that time we were exploring the possibility of an insanity defense – trying to find a reason to explain why you did what you did. Beyond the psychological exam, we also requested and got a SPECT exam to determine if you suffered from any type of brain injury that could have contributed to your actions.

When I was discussing your case in chambers, the judge said "I think it was probably a good use of funds." You are aware that Dr. Bursztan was extremely expensive – thousands of dollars. The judge had asked me to talk to Dr. Bursztan about reducing the fee he charged.

After the judge repeated that he thought it was a good use of funds, I said "I still haven't talked with Harold Bursztan to get that roll back on his final." There, I am simply telling the judge that I have not yet asked that the doctor give us a reduced rate on his fee, because the money was coming from the indigent defense fund. When I say "if you want to work in this state again" I'm simply telling the judge what I will tell the doctor: If you expect to be hired again, you have to meet us somewhere in the middle – in other words, you can't charge us the same amount as you would charge a wealthy client who could afford to pay the very high price.

That is what that discussion referred to.

Now, as to your assertion that I "withheld" the doctor's report from you:

*Exhibit 4*

Again, as you recall, we discussed the findings of both experts – that you were not insane, that you did not suffer any brain injury, and that your actions could not be attributed to any mental disease or defect. It was only after receiving and discussing these findings that we began discussing a negotiated plea.

James, you were well aware at the time that you had killed another human being. In fact, you confessed to the crime. You were in total agreement with the manner in which Linda and I proceeded in your case. You told us that you felt you had a mental problem – that you must have been insane to have done what you did. Because neither Linda nor I are trained in the field of psychiatry we secured the expertise necessary to assist us in that area. Unfortunately, the experts' findings foreclosed any chance we had to proceed with an insanity defense.

As to your request for a copy of your file, I am confident that you received my letter of a week ago. In that letter I explained to you that we sent you a copy of your entire file. I included the two cover letters that accompanied each section of your file. Again, I will tell you that it is the policy of the public defender to provide you a free copy of your complete file one time and one time only. We sent you a free copy of your 797 page file. Again I recommend that you get it back from whomever you gave it to. If you did not give it to anyone, then you must still have it.

If you are unable to get in touch with whomever you gave the file to, let me know who it is and I will make every effort on your behalf to get it from him/her and return it to you.

While I understand your frustration, I do not appreciate your threat to file a baseless professional conduct complaint. I have been nothing other than professional in all my interactions with you. I have answered all your correspondence in a timely manner. I will continue to do so.

Yours truly,

Randy Hawkes

EXHIBIT 5

# The State of New Hampshire

STRAFFORD    County

SUPERIOR    Court
99-S-584    No.

### ACKNOWLEDGMENT AND WAIVER OF RIGHTS
#### FELONY

MARCH 16 , ⊜ 2000

I,   JAMES COVINGTON   of SOMERSWORTH NH

_____ , my attorney being RANDY HAWKES / LINDA SLAMON
do hereby freely and voluntarily make the following statements which I understand shall apply to each and every indictment, if there be more than one, to which I intend to plead GUILTY.

I have discussed this present plea of GUILTY to the charge in the indictment with my attorney who has explained the nature of the charge to me. I fully understand the charge of which I stand accused, which is

2° DEGREE MURDER

I understand that I am under no obligation to plead GUILTY, and that even after signing this form I am still under no obligation to plead GUILTY.

I understand that by pleading GUILTY to the indictment I am giving up the following constitutional rights as to that crime:

I GIVE UP ALL THE ABOVE RIGHTS OF MY OWN FREE WILL.

- 2 -

I understand that by pleading GUILTY I am admitting to the truth of the charge against me in the indictment, and that on my admission that I am GUILTY, and the Judge's acceptance of my GUILTY plea, a conviction will be entered against me.

I am pleading GUILTY because I am GUILTY. I admit that I committed the acts charged in the indictment and that I committed the acts _____ KNOWINGLY _____ (state of mind). No force has been used upon me, nor have any threats been made to me, by any member of the Prosecuter's Office or anyone else in an effort to have me enter this plea of GUILTY to the indictment. No promises have been made to me by any member of the Prosecuter's Office or anyone else in an effort to have me enter this plea of GUILTY to the indictment, except as follows: _____ 30 YEAR "CAPPED" PLEA _____ However, I understand that the Judge is not bound by the Prosecutor's recommendation as to sentence. I understand that I may withdraw my plea if the Judge exceeds the limits of a negotiated plea.

I understand as a consequence of my plea of GUILTY that the Judge may impose such sentence as in his discretion s/he considers appropriate, subject, however, to those limits prescribed by law. My attorney, with whose services I am satisfied, has advised me of the penalties that the Judge can impose for the crime to which I have pleaded GUILTY. I understand that this charge against me is a Class _____ HOMICIDE _____ Felony and that the maximum penalty is _____ LIFE _____ years and the minimum penalty is _____ years, and that in addition a fine may be imposed not to exceed _____ FOUR THOUSAND _____ dollars.

I understand that even though I am pleading GUILTY and giving up my right to call witnesses, and testifying myself, that this does not apply to the calling of witnesses and testifying on the question of the sentence to be imposed.

I am not under the influence of drugs or alcohol.

ALL OF THESE STATEMENTS THAT I HAVE GIVEN TODAY IN THIS ACKNOWLEDGMENT OF RIGHTS ARE TRUTHFUL AND VOLUNTARILY GIVEN.

I do not have any questions at this time of my attorney or of the Prosecuter's Office. If there are any questions of the Judge or if there is anything I would like to say prior to sentencing in this case, my attorney will make this known to the Judge at the time of my plea to this indictment. I understand the entire contents of this Acknowledgment of Rights, and I freely and voluntarily sign this form below. I also understand that I may have a copy of this form upon request.

_____ 3/3/2000 _____
Date
3/16/2000                                   _____ James Covington _____
                                            Defendant

As counsel for the defendant, I have thoroughly explained to the defendant all the above, including the nature of the charge, the elements of the offense which the State must prove beyond a reasonable doubt and the maximum and minimum penalties. I believe the defendant fully understands the meaning of this Acknowledgment of Rights, that s/he is not under the influence of drugs or alcohol, and that s/he knowingly, intelligently and voluntarily waives all of his/her rights as set forth in this form.

_____ 3/3/00 _____
Date
3/16/00                                     _____ Counsel for the Defendant

The undersigned Justice of the _____ Court, having inquired into the education and background of the defendant, is satisfied that s/he fully understands all of his/her rights as set forth above, and that s/he is not under the influence of drugs or alcohol. Court finds that the defendant has the mental capacity to evaluate these rights and, having done so, to knowingly and intelligently waive all of his/her rights as set forth in this form, and the defendant does knowingly, intelligently, and voluntarily waive those rights.

_____ 3-16-00 _____
Date

                                            Peter H. Fauver
                                            Presiding Justice    -3-